UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

                          Plaintiff,         **AFFIRMATION**

             -against-
                                             **Docket No.  06-CR-6091**
DARYL SESSION
                          Defendant.

_____

STATE OF NEW YORK    )
COUNTY OF ERIE       )      SS:
CITY OF BUFFALO      )

        DAVID J. SEEGER, ESQ., an attorney admitted to practice in the Courts of the

State of New York, does affirm under penalty of perjury:

        1.      Affiant is co-counsel with Leigh E. Anderson, Esq., for Defendant Daryl

Session and makes this affirmation in support of said Defendant's pre-trial motions.

        2.      Defendant Daryl Session files the following motions and requests for

relief:

I.      Motion for Hearing on Government's Duties Under Cooperation
        Agreement and for Provision of Substantial Assistance

II.     Motion to Exclude Statements by Non-testifying Co-conspirators

III.    Motion for a Bill of Particulars

IV.     Motion for Revelation of Identity of Informants

V.      Motion for Discovery Pursuant to Rule 16 and Notice of Intention
        Pursuant to Rule 12

VI.     Motion to Compel Production of *Brady* Material

VII.    Motion for Disclosure of Evidence Pursuant to Rules 404(b), 608 and 609
        of the Federal Rules of Evidence

VIII.   Motion for Disclosure of Witness Statements

IX.     Motion for Preservation of Rough Notes and Other Evidence

X.    Motion for Grand Jury Transcripts

XI.   Motion to Controvert Interception Orders and Suppress Evidence

XII.   Motion to *Voir Dire* Government Experts Outside the Presence of the Jury

XIII.  Motion for Audibility Hearing

XIV.  Motion for Leave to Make Other Motions

3.    The motions filed and included (and referred to as numbered) below should be considered separate motions and requests for relief, but are filed together in one pleading for the convenience of the Court and opposing counsel.

**I**

**MOTION FOR HEARING ON GOVERNMENT'S DUTIES
UNDER COOPERATION AGREEMENT AND FOR
PROVISION OF SUBSTANTIAL ASSISTANCE**

4.    A Complaint was filed against the defendant, Daryl Session on April 15th, 2005.  The defendant in conjunction with and through his attorney, Peter J. Pullano, Esq. negotiated the terms of a cooperation agreement. The defendant cannot recall whether the terms of the cooperation agreement were reduced to writing or signed by the relevant parties to the cooperation agreement.  A copy of this cooperation agreement has not been provided to defense counsel.

5.    However, an agreement was entered into and for that reason and only that reason that Daryl Session provided valuable and substantial assistance to the United States Attorney.

6.    U.S.S.G. § 5k1.1 provides that a court may depart from sentencing guidelines "upon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense."   U.S.S.G. § 5k1.1.

7.      In cases where there is no cooperation agreement, "federal district courts have authority to review a prosecutor's refusal to file a substantial-assistance motion and to grant a remedy if they find that the refusal was based on an unconstitutional motive." *Wade v. United States*, 504 U.S. 181, 185-86 (1992).  Thus, where the government's refusal to file a § 5k1.1 motion "is based upon such impermissible considerations as race, religion, or the desire to prevent the defendant's exercise of constitutional rights," that refusal may be overturned.  *United States v. Heatley*, No. S11 96 CR 515, 1999 WL 61816, at * 13 (S.D.N.Y. Jan. 29, 1999).  Similarly, a defendant is "entitled to relief if the prosecutor's refusal to move was not rationally related to any legitimate Government end."  *Wade v. United States*, 504 U.S. 181, 186 (1992); *United States v. Truesdale*, 258 F.Supp.2d 296, 298 (S.D.N.Y. 2003) (holding that where no written plea or cooperation agreement existed, the Government's failure to make a § 5k1.1 motion can be challenged only if the defendant makes a substantial threshold showing of an unconstitutional motive- such as the race or religion of the defendant or a lack of a rational relationship to a legitimate government objective); *See also United States v. Barksdale*, 125 F.3d 845 (2d Cir. 1997) (holding that the government's refusal to make a § 5k1.1 motion was rationally related to a legitimate governmental purpose of not rewarding a defendant who had engaged in perjury).

8.      "It is well settled that, in the absence of a cooperation agreement, a court may not inquire into the government's failure to make a motion unless there is a substantial threshold showing of an unconstitutional motive."   *United States v. Morgan*, 386 F.3d 376, 382 (2d Cir. 2004).  Thus a "claim that a defendant merely provided substantial assistance will not entitle a defendant to a remedy or even to discovery or an evidentiary hearing."  *Wade v. United States*, 504 U.S. 181, 186 (1992).  *See also United States v. Martinez*, 210 F.3d 356 (2d Cir. 2000) (holding that defendant had no right to discovery or an evidentiary hearing absent a substantial threshold showing that the

prosecutor in fact acted from an unconstitutional motive); *United States v. Difeaux*, 163 F.3d 725, 729 (2d Cir. 1998) (holding that defendant had no right to an evidentiary hearing unless he made a substantial threshold showing of an improper motivation on the prosecutor's part).  "Nor would additional, but generalized allegations of improper motive" allow for an evidentiary hearing.  *Wade v. United States*, 504 U.S. 181, 186 (1992); *See United States v. Morgan*, 386 F.3d 376, 383 (2d Cir. 2004) (holding that defendant's generalized assertions that the government improperly interfered with his relationship with his children failed to satisfy the substantial threshold showing requirement of an unconstitutional motive).

9.      Assuming that the government alleges that there is no cooperation agreement, in this case, the government is refusing to file a § 5K1.1 motion unless the defendant, Daryl Session pleads guilty to a state murder charge for a murder in the City of Rochester allegedly involving the defendant.  Clearly, the government's refusal to provide a § 5K1.1 motion is motivated by the government's desire to deprive Daryl Session of his Sixth amendment right to a jury trial, his right to due process of the law and the right to confront witnesses against him.  In addition, the government's refusal to file a § 5K1.1 motion unless the defendant pleads to an uncharged murder charge is not rationally related to a legitimate governmental purpose.  The charge relates solely to allegations made pursuant to the laws of New York State, which the U.S. Attorney has no responsibility for enforcing.  In addition, the motive of depriving a defendant of his Sixth amendment right to a jury trial is not rationally related to a legitimate government objective.  The defendant has not been charged with this murder, nor has he been indicted in this alleged murder. In addition, the evidence of the defendant's involvement in this crime is unknown, if it indeed even exists.

10.     In addition, the government has not alleged that the defendant committed perjury, defendant's credibility as a witness was damaged or that he materially

weakened their case.  Depriving to the defendant of his right to a trial is the government's sole motivation for withholding a § 5K1.1 motion despite the substantial assistance that the defendant.  This is clearly an unconstitutional motive and not rationally related to a legitimate government objective.

11.     In situations where there is a cooperation agreement, the court may make a further inquiry where the government declines to file a §5K1.1 motion, in addition to the court's ability to inquire in situations where unconstitutional motives or a lack of a rational relationship to a legitimate government objective are made pursuant to a substantial threshold showing.  "[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled."  *United States v. Leonard*, 50 F.3d 1152, 1157 (2d Cir. 1995).

12.     In cases where "a plea agreement provides that the government will file a 5K1.1 motion if it determines that the defendant has provided substantial assistance, a court's review of the government's decision not to file a 5K1.1 motion is more searching." *United States v. Harris*, 188 F.Supp.2d 294, 300 (W.D.N.Y. 2001).  A district court may review the government's decision not to file a 5K1.1 motion "to see if the government has lived up to its end of the bargain."  *United States v. Knights*, 968 F.2d 1483, 1486 (2d Cir. 1992).

13.     "[C]ooperation agreements, like plea bargains may usefully be interpreted with principles borrowed from the law on contract."  *United States v. Khan*, 920 F.2d 1100, 1105 (2d Cir. 1990).  "[W]here the explicit terms of a cooperation agreement leave the acceptance of the defendant's performance to the sole discretion of the prosecutor, that discretion is limited by the requirement that it be exercised fairly and in good faith." *United States v. Khan*, 920 F.2d 1100, 1105 (2d Cir. 1990).  "A prosecutor's determination of dissatisfaction . . . cannot be made invidiously or in bad faith."  *United*

*States v. Rexach*, 896 F.2d 710, 714 (2d Cir. 1990).  In refusing to make a §5K1.1

motion, it is "unfair for the government to rely upon known, pre-agreement

circumstances as a reason for not moving."  *United States v. Knights*, 968 F.2d 1483,

1488 (2d Cir. 1992).  In addition, it is "fraudulent to have induced a defendant's plea with

a promise that the government already knew it was not going to keep."  *United States v.*

*Knights*, 968 F.2d 1483, 1488 (2d Cir. 1992).

14.      Clearly, in this case, the government's refusal to file a §5K1.1 motion was

made in bad faith.  The government has not alleged breach of the cooperation

agreement by the defendant.  Nor have they alleged that the defendant committed

perjury, damaged his credibility as a witness or materially weakened the government's

case against defendants in other cases.  By requiring that the defendant plead to an

uncharged and indicted state charge of murder, the government acted in bad faith and

fraudulently by inducing the defendant's cooperation pursuant to a cooperation

agreement when the government had no intention of abiding by the terms of that

agreement.  In addition, the government breached the cooperation agreement by

changing the terms of that cooperation agreement.

15.      "There are two steps involved in sentencing when a cooperation

agreement contemplates a motion for downward departure."  *United States v. Khan*, 920

F.2d 1100, 1106 (2d Cir. 1990).  The "[d]efendant must first allege that he or she

believes the government is acting in bad faith."  *United States v. Khan*, 920 F.2d 1100,

1106 (2d Cir. 1990).  "Such an allegation is necessary to require the prosecutor to

explain briefly the government's reasons for refusing to make a downward departure."

*United States v. Khan*, 920 F.2d 1100, 1106 (2d Cir. 1990).  Inasmuch as a defendant

will generally have no knowledge of the prosecutor's reasons, at this first or pleading

step the defendant should have no burden to make any showing of prosecutorial bad

faith."  *United States v. Khan*, 920 F.2d 1100, 1106 (2d Cir. 1990).  "Following the

government's explanation, the second step imposes on [the] defendant the requirement

of making a showing of bad faith sufficient to trigger some form of a hearing." *United*

*States v. Khan*, 920 F.2d 1100, 1106 (2d Cir. 1990). "The defendant need not . . .

establish the government's bad faith in order to secure an evidentiary hearing; he must

only make a showing of bad faith." *United States v. Roe*, 445 F.3d 202, 210 (2d Cir.

2006). The kind of hearing required, "whether it be merely oral argument or should

include a formal evidentiary hearing is a matter that lies within the sound discretion of

the district court." *United States v. Knights*, 968 F.2d 1483, 1487 (2d Cir. 1992).

## II

## MOTION TO EXCLUDE STATEMENTS BY
## NON-TESTIFYING CO-CONSPIRATORS

16.     Pursuant to *Bruton v. United States*, 391 U.S. 123 (1968), and the Sixth

Amendment to the United States Constitution, Mr. Session respectfully requests that the

Court bar the admission into evidence of all post-arrest statements by non-testifying co-

conspirators/co-defendants which may implicate him in any way.

17.     In *Bruton v. United States*, 391 U.S. 123 (1968), the Supreme Court held

that a defendant's Sixth Amendment right of cross-examination was violated when a

non-testifying co-defendant's confession, implicating the defendant, was introduced at

their joint criminal trial. *Bruton's* protection of defendants' Sixth Amendment

confrontation and cross-examination rights remains a linchpin of joint criminal trials.

18.     Although in *Richardson v. Marsh*, 481 U.S. 200 (1987), the Supreme

Court approved the use of non-testifying co-defendant confessions where all reference

to the defendant's existence are eliminated and a limiting instruction is used, the

continued vitality of *Bruton* and broad protections of the Sixth Amendment were

demonstrated by the Supreme Court's recent decision in *Gray v. Maryland*, 523 U.S. 185

(1998). There, the Court applied *Bruton* to a case where reference to the defendant's

existence was eliminated in the confession, but deletions in the confession were marked

with a blank or "deleted."  The Court found that the defendant's Sixth Amendment rights

were violated.  *Cf. Lilley v. Virginia*, 527 U.S. 116 (1999) (admission of non-testifying

accomplice's confession violated Confrontation Clause).

19.     Because he has not received discovery of any post-arrest statements by

co-conspirators or co-defendants, Mr. Session cannot know whether the government will

seek to use such evidence against him, or even if such statements exist.  Therefore, Mr.

Session makes this motion to exclude any such statements, and requests leave to

amend and supplement it, and to file an additional memorandum of law or memorandum

in support, after he has received full discovery and can apply the applicable authorities

to the facts presented.

### III

### MOTION FOR A BILL OF PARTICULARS

20.     Mr. Session requests an Order, pursuant to Rule 7(f) of the Federal Rules

of Criminal Procedure, requiring the government to provide a written bill of particulars as

requested below.

21.     The Indictment charges Mr. Session with conspiring with others to

possess with intent to distribute cocaine, but does not list any overt acts or any acts he

allegedly committed in furtherance of the conspiracy.  It does not list particular dates on

which Defendant did anything in furtherance of the conspiracy.  Furthermore, in none of

the voluntary discovery provided by the government is there any information or evidence

linking Mr. Session to a conspiracy to possess with the intent to distribute cocaine in any

amounts.

22.     As the Court well knows, Rule 7(f) of Federal Rules of Criminal Procedure

permits the Court to direct the filing of a bill of particulars.  As recognized by the Second

Circuit, the bill of particulars has three functions:  (1) to inform the defendant of the

nature of the charge against him with sufficient precision to enable him to prepare for

trial; (2) to avoid or minimize the danger of surprise at the time of trial; and (3) to enable

him to plead his acquittal or conviction in bar of another prosecution for the same

offense when the indictment itself is too vague, and indefinite for such purposes.  *United

States v. GAF Corp.*, 928 F.2d 1253 (2d Cir. 1991); *United States v. Davidoff*, 845 F.2d

1151 (2d Cir. 1988); *United States v. Bortnovsky*, 820 F.2d 572 (2d Cir. 1987).  The

particulars requested are also necessary because the charges in the indictment are so

general that they do not advise the defendant of the specific acts of which he is accused.

*United States v. Torres*, 901 F.2d 205 (2d Cir. 1990).

23.     Without such specification as to the nature of his allegedly improper

conduct, Mr. Session is without ability to prepare for trial and the danger of surprise at

trial is greatly increased.  *See, also, United States v. Bortnovsky*, 820 F.2d 572 (2d Cir.

1987) (prosecutor was required to advise the defendant, through a bill of particulars,

which specific documents they intended to rely upon in a mail fraud prosecution).

24.     As recognized by the Court in *United States v. Rosa*, 891 F.2d 1063,

1066 (3d Cir. 1989),

> Prior to 1966, Rule 7(f) limited bills of particulars to those situations
> in which the moving party demonstrated the cause for his request.
> By amending the rule in 1966 to eliminate the cause requirement, the
> drafters expressly sought "to encourage a more liberal attitude by the
> courts towards bills of particulars without taking away the discretion
> which courts must have in dealing with such motions in individual
> cases."  Fed. R. Crim. P. 7 Advisory Committee's note to 1966
> amendment.  Consistent with this shift, the case law now recognizes
> that motions for bills of particulars should be granted whenever an
> indictment's failure to provide factual or legal information
> significantly impairs the defendant's ability to prepare his defense or
> is likely to lead to prejudicial surprise at trial.

25.     In accordance with these principals, we request that the specified

particulars be supplied as without such information counsel's ability to prepare a defense

is significantly impaired and it is likely that prejudicial surprise at trial will occur.

26.     For the reasons set forth above, and for the additional reasons set forth below, the Defendant requests the following particulars as to each count (i.e., each separate conspiracy):

a.     A list of all unindicted co-conspirators, regardless of whether the government intends to call any co-conspirator as a witness at trial.  *See United States v. DeGroote*, 122 F.R.D. 131, 137-139 (W.D.N.Y. 1988) (collecting cases); *United States v. Feola*, 651 F. Supp. 1068, 1133-34 *(S.D.N.Y. 1987), aff'd.,* 875 F.2d 857 (2d Cir. 1989) (mem.);

b.     The specific times, dates and locations when and where Mr. Session and other co-conspirators combined and agreed to possess with intent to distribute the controlled substance in question.

c.     Where "elsewhere" the co-conspirators allegedly conspired;

d.     How the co-conspirators, including Mr. Session, knowingly, willfully and unlawfully combined, conspired and agreed together to possess with intent to distribute the controlled substances in question;

e.     List all uncharged overt acts taken by the co-conspirators, including Mr. Session;

f.     List the exact weight of all controlled substances that Mr. Session allegedly conspired with co-conspirators to possess with intent to distribute, and the date(s) on which he conspired to possess each amount of cocaine;

g.     Particularly describe the significance of January, 2000 as the alleged date of the commencement of the conspiracy, if the exact date is not known to the grand jury;

h.     Whether or not any individual present during the commission of any alleged overt acts was acting for the government, and the names, or names then used or similar identification, or any such person;

i.     The names, to the extent known, of any persons present when the overt and substantive acts allegedly took place;

j.     The dates, to the extent known, when each defendant joined the conspiracy, and the date on which the conspiracy ended, including the dates when each defendant left the conspiracy, if different than the alleged ending date.  *See United States v.*

*Feola*, 651 F. Supp. 1068, 1134 (S.D.N.Y. 1987), *aff'd*, 875 F.2d 857 (2d Cir. 1989); *United States v. DeGroote*, 122 F.R.D. 131 (W.D.N.Y. 1988); *United States v. Scott*, 93-CR-26E (W.D.N.Y. 1994); and,

k.   The quantity of controlled substance distributed and possessed by each defendant and each co-conspirator during the course of the alleged conspiracy to the extent that this information will be presented by the government at trial.

27.   Whether to grant a bill of particulars rests within the sound discretion of the district court. *United States v. Panza,* 750 F.2d 1141, 1148 (2d Cir. 1984). A bill of particulars is particularly important in complex cases, such as conspiracy cases covering an extended period of time. See, e.g., *United States v. Davidoff*, 845 F.2d 1151 (2d Cir. 1988). The fact that evidentiary details or the government's theory of the case may be revealed is insufficient reason to deny a reasonable request for a bill of particular. *United States v. Greater Syracuse Board of Realtors*, 438 F.Supp. 376 (N.D.N.Y. 1977).

*United States v. Calvi*, 830 F.Supp. 221 (S.D.N.Y. 1993), is instructive regarding both the necessity and the importance of a bill of particulars:

An order directing filing of a bill of particulars in regard to this rather detailed indictment would be inappropriate in view of the United States Attorney having responded to all other discovery requests of the defense, and no claim of inadequacy of that response having been made.

The prosecution is in the best position to know in advance of trial whether any of its evidence is likely to produce surprise making it difficult for the defense to cross-examine the applicable witnesses or otherwise defend the case with full vigor. If such a risk exists, it will be in the interest of the United States to furnish further information in advance of trial to avoid the need for a continuance during the trial to alleviate any adverse consequences which may flow from such surprise.

Rule 7(f) of the Federal Rules of Criminal Procedure does not require the United States Attorney to furnish a three dimensional colored motion picture of the prosecution's proof prior to trial. In the event that actual unfair surprise can be shown, an appropriate continuance may be considered.

*Id.* at 223. *Calvi* directly correlates the need for a bill of particulars with the amount of detail in the indictment. Although the reported decision in *Calvi* does not set forth the indictment *in toto*, the indictment there was obviously much more detailed than the indictment here, which does little more than track the statutory language over a period of years. Here, the indictment is fairly characterized as "bare bones," and in order to adequately prepare a defense to these charges and for trial, the Court should order the government to file a bill of particulars providing the information requested above.

**IV**

**MOTION FOR REVELATION OF
IDENTITY OF INFORMANTS**

28.     Defendant Session hereby moves this Court, pursuant to the provisions of Rule 16 of the Federal Rules of Criminal Procedure and the Fifth Amendment to the United States Constitution, for an Order requiring the government to disclose the following information:

> (a)     The identity of any and all informants possession
> information which may be material to Defendant's
> alleged built or innocence;

> (b)     The identity of any and all informants who were
> present at any of the events which are described
> in the instant indictment;

> (c)     Any and all government reports containing information
> received from any informant referenced above which
> may be material to the instant case.

29.     This motion is made on the grounds that the informants are percipient witnesses to the allegations contained in the instant indictment, and may also possess exculpatory and exonerating information. With respect to item (c), Mr. Session requests these reports on the ground that, to the extent he has been unable to review reports containing factual information relayed by that informant, he has been unable to lay proper factual foundation for the disclosure of the informant. At a minimum, Defendant

seeks to have all reports described above submitted *in camera* to the Court for review

and subsequent disclosure to counsel.  In the event that the Court does not compel

disclosure of this information and the identities of the informants, Defendant respectfully

requests that all government reports be sealed and made part of the record in the instant

case.

### A.  The Government is Obliged to Disclose<br>The Identity and Whereabouts of Informants<br>And to Make Them Available to the Defense.

30.    In *Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623 (1957), the United

States Supreme Court held that whenever an informant's testimony may be relevant and

helpful to the accused's defense, his or her identity must be revealed.  The *Roviaro*

Court set forth the following general standard for disclosure:

> Where the disclosure of an informant's identity or the contents of
> his communications is relevant and helpful to the defense of an
> accused, or is essential to the fair determination of a cause, the
> privilege must be waived.  In these situations, the trial court may
> require disclosure and, if the government withholds the information,
> dismiss the action.

*Roviaro v. United States, supra*, 353 U.S. at 60-61.

31.    The Court made clear that, while there is no fixed rule with respect to

disclosure, four considerations are relevant:  (1) the crime charged; (2) the possible

defenses; (3) the possible significance of the informant's testimony; and (4) other

relevant factors.

32.    The "relevant and helpful" language of *Roviaro* has been interpreted by

the Second Circuit "to require disclosure when it is material to the defense."  *DiBlasio v.*

*Keane*, 932 F.2d 1038, 1041-1042 (2d Cir. 1991).  The *DiBlasio* Court recognized that:

> The judge must consider a number of factors in determining
> whether the informant's testimony is material:  "the crime
> charged, the possible defenses, the possible significance of
> the informant's testimony and other relevant factors."

*Citing, United States v. Saa*, 859 F.2d 1067, 1073 (2d Cir. 1988), *cert. denied*, 489 U.S.

1089, 109 S.Ct. 1555 (1989), *quoting Roviaro v. United States*, 353 U.S. 53, 77 S.Ct.

623 (1957).

33.     Similarly, the Ninth Circuit requires disclosure of the identity of an

informant when he or she is a percipient witness.  Thus, in *United States v. Cervantes*,

the Court recognized that a "percipient witness" must be disclosed:

> The government acknowledges that the informant Duque
> was a percipient witness to the transaction.  It therefore
> supplied Cervantes with the informant's identity.  *See,*
> *Roviaro v. United States.*

*United States v. Cervantes*, 542 F.2d 773, 775 (9th Cr. 1976) (*en banc*).

34.     The same result was reached in *United States v. Hernandez:*

> In light of [the informant'[s] role in the narcotics transaction
> with which appellants were charged, it cannot be said that
> disclosure of Smith's identity would not have been "relevant
> or helpful" to the appellant's defense . . . Because [the
> informant] was a participant in the events that were critical
> to the prosecution's case, no claim could be raised under
> *Roviaro*, nor was it raised, that [the informant's] identity
> could be lawfully withheld from the appellants.  [Citations
> omitted].

*United States v. Hernandez*, 608 F.2d 741, 744-745 (9th Cir. 1979); *see also, United*

*States v. Miramon*, 443 F.2d 361, 362 (9th Cir. 1971).

35.     The law is also clear that where an informant's testimony is essential to a

fair determination, the government may be required to disclose his identity and address,

if any.  *United States v. Roberts*, 388 F.2d 646 (2d Cir. 1968).  *See also, United States v.*

*Anderson*, 509 F.2d 724 (9th Cir. 1975) (within the court's discretion to compel disclosure

even when use of the informant goes only to probable cause).  Further, the need for

disclosure and production of the informant is mandated when the indictment contains a

conspiracy charge and the informant could have information regarding either knowing

membership in the conspiracy or possible entrapment.  *United States v. Miramon, supra;*

*Lopez-Hernandez v. United States*, 394 F.2d 820 (9th Cir. 1968); *Alexander v. United States*, 362 F.2d 379 (9th Cir. 1966).

36.    Obviously, it is not Defendant Session's burden to prove what the informant would actually say if disclosed since the informant's unavailability makes that burden impossible to discharge in all cases. *See, e.g., United States v. Miramon, supra*, where disclosure should have been made because the informant "might have corroborated the (defendant's story)." *Id.* at 362. As stated by the Court in *United States v. Day, supra*: "No matter how inert his role of participation he might still possess information to a fair determination of the issues."

37.    As to all informants, the defense is entitled to a revelation of their whereabouts and addresses prior to trial so that sufficient investigation into their background can be made. As stated by the Court in *United States v. Hernandez, supra*:

> We recognize that the address of a principal witness, as
> [the informant] most assuredly was, is an integral element
> of identity for without such information, little meaningful
> inquiry can be made into the background information affecting
> credibility.

*United States v. Hernandez*, 608 F.2d 741 at 745 (9th Cir. 1979).

38.    In this case, therefore, the location and present whereabouts of any and all informant[s] must be immediately disclosed so that an investigation may be made into the credibility and background of the informant[s] prior to trial. Further, any purported government assertion that there is some unspecified danger to informant[s] is insufficient to justify withholding the information concerning his or her whereabouts. As *Hernandez* makes clear, the decision concerning potential "danger" must be made only after an evidentiary hearing. *Hernandez, supra*, 608 F.2d at 745, fn.3.

39.    Finally, the government's obligation is not fully satisfied by merely disclosing the identity and location of the informant[s]. The defense here specifically requests that the informant[s] be produced. The Ninth Circuit has held that government

has an obligation to "accomplish this or show that, despite reasonable efforts, it was not able to do so." *United States v. Hart*, 546 F.2d 798, 799 (9th Cir. 1976) (*en banc*). *See also, United States v. Cervantes, supra; Velarde-Villa Real v. United States*, 354 F.2d 9 (9th Cir. 1965).

40.    For the reasons cited above, it is apparent that each of the informant[s] in this case is a material witness. The government should be ordered to disclose the identity of that witness and his or her whereabouts, and to make those witnesses available to the defense. Failure to do so would require dismissal of the case.

### B. Upon a Proper Showing, the Defendant is Entitled to Pre-Trial Access to Prosecution Witnesses

41.    Mr. Session recognizes that the general rule is that in a non-capital case, the accused has no constitutional right to require production of the names and addresses of prospective witnesses. *See, e.g., United States v. Cole*, 449 F.2d 194, 198 (8th Cir. 1971), *cert. denied*, 405 U.S. 931, 92 S.Ct. 991 (1972). However, it should be noted that this rule is suffering from increasing erosion. For example, in *United States v. Baum*, 482 F.2d 1325 (2d Cir. 1973), the Second Circuit held that it was reversible error to deny pre-trial disclosure of the identity of a witness to the defendant's similar criminal conduct. *See also, United States v. Allstate Mortgage Corp.,* 507 F.2d 492 (7th Cir. 1974) (rule of *Baum* adopted and approved). Moreover, an order requiring pretrial disclosure of government witnesses is a proper exercise of judicial authority. *See, United States v. Richter*, 488 F.2d 170, 173-174 (9th Cir. 1973) (affirming the authority of the trial court to order pre-trial discovery of prospective government witnesses); *United States v. Jackson*, 508 F.2d 1001, 1006-1007 (7th Cir. 1975) (a trial court can enter and order *sua sponte* and without a showing of materiality requiring pre-trial disclosure of prospective government witnesses.

42.    The United States Supreme Court first addressed the disclosure of

government witnesses in *Alford v. United States:*

> Cross-examination of a witness is a matter of right.  Its
> permissible purposes, among others, are that the witness
> may be identified with his community so that independent
> testimony may be sought and offered of his reputation for
> veracity in his own neighborhood; that the jury may interpret
> his testimony in the light reflected upon it by knowledge of
> his environment; and that facts may be brought tending to
> discredit the witness by showing that his testimony in chief
> as untrue or biased . . . . Prejudice ensues from a denial of
> the opportunity to place the witness in his proper setting and
> put the weight of his testimony and his credibility to a test,
> without which the jury cannot fairly appraise them.  [Citations
> omitted].  *Alford v. United States*, 282 U.S. 687, 688, 51 S.Ct.
> 218, 219 (1931).

43.     Subsequently, in *Smith v. Illinois*, 390 U.S. 129, 88 S.Ct. 748 (1967), the

Supreme Court reconsidered the rule of *Alford v. United States* and held that the failure

to disclose the address of a primary prosecution witness was a denial of the defendant's

Sixth Amendment right to confront and cross-examine witnesses.  The Court stated:

> The witness' name and address open countless avenues of
> in-court examination and out-of-court investigation.  To forbid
> this most rudimentary inquiry at the threshold is effectively
> to emasculate the right of cross-examination itself.  Id. at 750.

44.     Therefore, it is the defendant's position that an accused has the right to

know the identity and location of prospective government witnesses so that he may

interview them prior to trial in order to put such witnesses in proper setting for purposes

of credibility and cross-examination.

45.     Based then, on the reasons cited above, it is respectfully requested that

the identity and location of the prospective government witnesses be disclosed and that

they be produced by the government prior to trial.

46.     Disclosure of informant information in this prosecution is essential to a fair

determination of the charges filed against the defendant.  Much of what the

government's evidence in this case appears to be is based on cocaine and heroin

trafficking that in no way is tied to Mr. Session.  Mr. Session is entitled to know whether

these government informants, who are criminals based on their actions in purchasing drugs and participants in and witnesses to criminal activity – have any knowledge of whether Mr. Session was involved in alleged criminal activity.

47.     In addition, the defense demands the following information about all informants:

a.      All evidence affecting the issues of bias or credibility;

b.      Their criminal records, *United States v. Auten*, 632 F.2d 478 (5th Cir. 1980);

c.      All promises or consideration of any kind given to the informants, *Giglio v. United States*, 405 U.S. 150 (1972);

*d.*     Identification of the informants' prior testimony, *Johnson v. Brewer*, 521 F.2d 556 (8th Cir. 1975);

e.      Evidence of psychiatric treatment of each informant or cooperating witness or person, *United States v. Lindstrom*, 698 F.2d 1154 (11th Cir. 1983);

f.      Evidence of the informants' narcotic habits, *United States v. Fowler*, 465 F.2d 664 (D.C. Cir. 1972);

g.      Whether the informants are being compensated, including favorable plea agreements, in return for their cooperation with the government.  *United States v. Morell*, 524 F.2d 550 (2d Cir. 1975); and,

h.      A review of the informant file kept by the authorities for each informant.

48.     The inherent unreliability of the testimony of an accomplice or government informant underscores the need for complete disclosure of information relating to credibility.  *See United States v. Bagley*, 473 U.S. 667 (1985); *Perkins v. LeFevre*, 642 F.2d 37 (2d Cir. 1981); *United States v. Caldwell*, 466 F.2d 611 (9th Cir. 1972).  Put another way, "[t]he use of informants to investigate and prosecute persons is fraught with peril."  *United States v. Bernal-Obeso*, 989 F.2d 331 (9th Cir. 1993).  For these reasons, the identities and information requested above should be disclosed by the government to Mr. Session.

**V**

**MOTION FOR DISCOVERY PURSUANT TO
RULE 16 AND NOTICE OF INTENTION
PURSUANT TO RULE 12**

49.     The government has provided some voluntary discovery, including

reports of examinations of narcotics, and wiretap applications, orders, and logs.

50.     However, pursuant to Federal Rule of Criminal Procedure

16(a)(1)(A)(B)(C) & (D), the Defendant now moves to compel discovery of any items or

information to which the Defendant is entitled.  *Specifically*, this request includes, but is

not limited to, the following:

      a.     copies of any and all records, including reports and/or logs,
relating to the alleged conspiracy and the arrest of all
co-conspirators;

      b.     copies of all records, including reports and/or logs, regarding
radio transmissions from the officers at any search warrant
or arrest scene regarding the investigation;

      c.     copies of any and all reports relating to the booking process
in this case;

      d.     copies of any reports and/or test results relating to
determination of drug quantity or type of drug;

      e.     copies of any and all photographs taken relating to this
investigation;

      f.     copies of any and all documents and photographs seized on
the day of any searches in this case;

      g.     inspection of all items seized from the Defendant on the day
of his arrest;

      h.     disclosure of the names and identities of expert witnesses the
government intends to call at trial, their qualifications, subject
of testimony, and reports, and the results of tests, examinations
or experiments which are material to the preparation of the
defense or which are intended for use by the government as
evidence-in-chief at the trial;

      i.     a copy of any search warrant or arrest warrant applied for
and/or issued or denied during the course of this investigation
(whether state, federal or local); and

> j.      pursuant to Rule 12(d) of the Federal Rules of Criminal
> Procedure, the Defendant requests written notification
> of any evidence that the government intends to use in
> its case-in-chief that may, in any way, be subject to a
> motion to suppress and which the Defendant is entitled
> to discover pursuant to Rule 16.

51.      Pursuant to Rule 16, Mr. Session requests that the government provide

him with discovery as provided by that Rule, to the extent that the government has not

already done so.  Mr. Session notes that the government has provided the defense a

substantial quantity of materials under the "voluntary discovery" policy in effect in the

Western District of New York.  Much of the voluntary discovery heretofore provided is in

satisfaction of Rule 16 discovery requirements.  However, it appears that the voluntary

discovery is less than what Rule 16 (upon Defendant's request, which is hereby made)

requires.  Therefore, this motion is brought to preserve the Defendant's discovery rights.

52.      The discovery afforded by Rule 16 has broadened.  Under the 1974

amendments, the policy underlying Rule 16(a)(1)(A) was stated as follows by the

Advisory Committee on Rules:

> "in the view that broad discovery contributes to the fair
> and efficient administration of criminal justice by
> providing the defendant with enough information to make
> an informed decision as to plea; by minimizing the
> undesirable effect of surprise at trial; and by otherwise
> contributing to an accurate determination of the issue
> of guilt or innocence."

53.      Importantly, Rule 16 does not permit the government to withhold

disclosure until trial, as in the case of Jencks Act materials.  Also, the standard for

disclosure of documents, objects and reports of examinations and tests is whether the

evidence is "material to preparing the defense," a considerably broader standard with a

lower threshold than the "exculpatory" threshold applicable to *Brady* material.

54.      It is not incumbent upon the Defendant to specifically describe all Rule 16

materials; the duty, for example, to furnish relevant written or recorded statements made

by the Defendant does not require the Defendant to designate the source of the recordings.  When the Government withholds materials, the proper and safest course for the prosecution is to seek a ruling from the court on whether a particular item is discoverable, rather than keeping defense counsel and the Defendant in the dark as to the existence and relevance of the withheld item.  *Wright v. U.S.*, 559 F.Supp. 1139, 1143 (E.D.N.Y., 1983), citing *U.S. v. Sherwood*, 527 F.Supp. 1001, 1003 (W.D.N.Y., 1981).

55.     The Government must define its duty to furnish discoverable evidence very broadly, and include any materials that "might" be "favorable" to the Defendant. *U.S. v. Bufalino*, 576 F.2d 446, 450 (2d Cir., 1978).

56.     Rule 12(b) establishes a procedure for notifying a defendant of the government's intention to use certain evidence at trial.  The express purpose of this procedure is to afford an opportunity for submission of pre-trial motions seeking the suppression of such evidence [Rule 12(b)(1) and (2)].  Specifically, Rule 12(b)(4)(B) provides that at the Defendant's request, in order to have an opportunity to move to suppress evidence under Rule 12(b)(3)(C), he may request notice of the government's intent to use (in its evidence-in-chief at trial) any evidence that the defendant may be entitled to discover under Rule 16.

57.     To the extent that the government complied with Rule 12(b), they need only so note on the disclosure notice.

58.     Therefore, pursuant to Rule 12(b), request is hereby made for the immediate disclosure by the government of a notice setting forth any evidence which the Defendant may be entitled to discover under Rule 16 which the government intends to utilize at trial, including, but not limited to:

**Statements of Defendants**

59.     Mr. Session hereby requests notification of any relevant written or recorded statements made by the Defendants, or copies thereof, within the possession, custody, or control of the government, the existence of which is known, or by the exercise of due diligence may become known, to the attorney for the government; that portion of any written record containing the substance of any relevant oral statement made by the Defendant whether before or after arrest in response to interrogation by any person then known to the Defendant to be a government agent; and recorded testimony of the Defendant before a grand jury which relates to the offense charged.  The government must also disclose to the Defendant the substance of any other relevant oral statement made by the Defendant whether before or after arrest in response to interrogation by any person then known by the Defendant to be a government agent if the government intends to use that statement at trial.  Upon request of a defendant which is an organization such as a corporation, partnership, association or labor union, the government must disclose to the defendant any of the foregoing statements made by a person who the government contends (1) was, at the time of making the statement, so situated as a director, officer, employee, or agent as to have been able legally to bind the defendant in respect to the subject of the statement, or (2) was, at the time of the offense, personally involved in the alleged conduct constituting the offense and so situated as a director, officer, employee, or agent as to have been able legally to bind the defendant in respect to that alleged conduct in which the person was involved.

**Defendant's Prior Record**

60.     Mr. Session hereby requests a copy of his prior criminal record, if any, as is within the possession, custody or control of the government, the existence of which is known, or by the exercise of due diligence may become known, to the attorney for the government.

**Documents and Tangible Objects**

61.     Mr. Session requests the following:  (1) any tangible items within the government's possession, custody and/or control which the prosecutor intends to uses as evidence in chief; (2) any tangible items within the government's possession, custody and/or control which was obtained from the Defendant or which belong to the Defendant; (3) any tangible items within the government's possession, custody and/or control which is material to the preparation of the Defendant's defense; and (4) any and all recordings of any conversations which pertain to any of the facts alleged in the instant indictment.

### Intercepted Communications

62.     Mr. Session hereby requests notification of the existence of any and all Title III surveillance, or any electronic surveillance conducted pursuant to federal, state or local warrant, including any intercepted communications (audio and/or video intercepts) or evidentiary leads derived therefrom, and a statement as to whether they were acquired in the presence or absence of court authorization.

1.      If acquired by warrantless means, disclosure is requested as to the following:

(a)     specifications of the name and address of the participant in each such communication who ostensibly consented to interception of same;

(b)     reproduction of any technical or physical surveillance logs respecting each communication so intercepted;

(c)     reproduction of any transcripts purporting to memorialize the content of each communication so intercepted; and

(d)     any instructions by the supervising agency to each participant who purportedly consented to the interception.

2.      As to each and every intercepted communication, counsel further seeks an opportunity to examine and inspect the electronic equipment used to intercept and record each communication constituting the subject of electronic surveillance.

3.      If acquired by eavesdrop order(s), disclosure and duplication is

requested as to the following:

    (a)    each eavesdrop order and each amendment and extension order;

    (b)    the application and all other supporting documents which preceded each such eavesdrop, amendment and/or extension order;

    (c)    all progress reports which relate to any eavesdrop, amendment and/or extension order;

    (d)    any technical and/or physical surveillance logs;

    (e)    all minimization instructions to the executing agency(s); and

    (f)    all sealing order(s) which relate to any of the aforementioned orders.

### Search and Seizure

63.    In order to preserve his rights, to the extent not yet provided, Mr. Session hereby seeks notification of whether any evidence to be offered at trial consists of or was derived from the "fruits" of any search and/or seizure authorized by virtue of a judicial and/or administrative search warrant.

### *Jencks* Material

64.    Mr. Session respectfully requests disclosure of *Jencks* material (18 U.S.C. 3500) at least 30 days in advance of trial so as to permit its meaningful use by the defense.

### Reports of Examinations and Tests

65.    Under Fed.R.Crim.Pro. Rule 16, the government (upon Defendant's request) is obligated to release discovery pertaining to various examinations and tests. The Rule states:

*(F) Reports of Examinations and Tests.* Upon a defendant's request, the government must permit a defendant to inspect and to copy or photograph the results or reports of any physical or mental examination and of any scientific test or experiment if:

    (i)    the item is within the government's

possession, custody, or control;

    (ii) the attorney for the government knows – or through due diligence could know – that the item exists; and

    (iii) the item is material to preparing the defense or the government intends to use the item in its case-in-chief at trial.

Non-federal law enforcement materials are not exempt from disclosure, and must be released if they are within the "possession, custody or control" of the government, following good faith efforts to obtain them.

66. The following categories of law enforcement records are requested:

- First, audio recordings, in digital or analog format, of all statements made by Mr. Session, *together with logs and transcripts*, within the meaning of Rule 16(a)(1)(B)(i).

- Second, investigative materials analogous to DEA Forms 6 & 7.

- Third, other investigative materials including photographs, investigator, officer and Assistant District Attorney notebooks, etc.

- Fourth, records pertaining to electronic monitoring of the location of Defendant's vehicles and the vehicles of his alleged or suspected co-conspirators, including, without limitation, records obtained or generated through the use of global positioning satellite technology, together with all applications and supporting documentation for judicial warrants or administrative approvals authorizing such monitoring.

67. The Rule requires "relevant" statements be released.  It is settled that in addition to the recordings, logs (for example, "line sheets") and transcripts must be furnished in addition to a duplicate of the recorded statement.  E.g., *U.S. v. Feola*, 651 F.Supp. 1068, 1145 (SDNY, 1987), citing *United States v. Cirello*, 499 F.2d 872, 882 (2d Cir., 1974), cert. den. 419 U.S. 1056 (1974) and other Second Circuit authority.

68. The Government's obligation to furnish Rule 16 materials is not dependent upon whether the Government (or any other American law enforcement agency) generated or collected the materials.  The duty to disclose extends to materials that have come into the Government's possession, custody or control, irrespective of

whether the materials were generated in the private sector, by state or local law enforcement agencies, or even in other nations. Thus, when United States Drug Enforcement Agency and non-federal agencies conduct a joint investigation, the Government must make good faith efforts to obtain Rule 16 (and ultimately Jencks Act) materials from the non-federal agencies. *United States v. Paternina-Vergara*, 749 F.2d 993 (2d Cir., 1984), cert. den. 469 U.S. 1217 (1985). See also *U.S. v. Guerrerio*, 670 F.Supp. 1215, 1219 (S.D.N.Y. 1987).

69. Substantial, good-faith disclosure includes the Government making available to defense counsel all non-federal law enforcement documents relating to this case that were ever in the Government's own files, and pursuing permission from the non-federal law enforcement agencies to obtain other records such as summaries, verbatim notes, officers' notebooks, daily diaries, photographs and the like. *Paternina-Vergara, supra,* 749 F.2d at 996 (2d Cir., 1984).

70. The various eavesdropping warrant applications that Rochester Police Department Police Officer Timothy Pearce submitted to the Court all assert the existence of a joint investigation involving federal and non-federal agencies. The federal agencies include the Bureau of Alcohol, Tobacco & Firearms, the Drug Enforcement Agency and the Internal Revenue Service. Non-federal agencies include the Rochester Police Department, Monroe County Sheriff's Department, "various unspecified Town and Village agencies within Monroe County," the New York State Police, the New York State Attorney General's Office and the Monroe County District Attorney's Office.

71. Defense counsel respectfully submits that Defendant Session will be prejudiced if the government does not diligently pursue, obtain and then disclose to Defendant the broad range of Rule 16 discovery materials that are likely to have been generated by the non-federal agencies but which have not been collected by the government and disclosed to Defendant.

72.     It is respectfully requested that the defense motion for discovery and inspection pursuant to Rule 16, and notice of intention be granted.

## VI

## MOTION TO COMPEL PRODUCTION OF *BRADY* MATERIAL

73.     Defendant hereby moves the Court for immediate disclosure of all exculpatory and/or impeaching material in the prosecution's possession, custody or control or which is otherwise known to the prosecution, in accordance with the prosecution's obligations under *Brady v. Maryland*, 373 U.S. 83 (1963).

74.     Disclosure of *Brady* material should be made at such a time as to allow the defense to use the favorable material effectively in the preparation and presentation of its case, even if satisfaction of this criterion requires pre-trial disclosure.  *United States v. Pollack*, 534 F.2d 964, 973 (D.C. Cir., 1976).

## VII.

## MOTION FOR DISCLOSURE OF EVIDENCE PURSUANT TO RULES 404(b), 608 AND 609 OF THE FEDERAL RULES OF EVIDENCE

75.     Pursuant to Rules 12(b)(4), (d)(1) and (2) of the Federal Rules of Criminal Procedure, and Rules 104(a) and 404(b) of the Federal Rules of Evidence, the defendants respectfully request that the government notify the Defendant of any evidence that the government contends would be admissible under Rule 404(b) of the Federal Rules of Evidence.

76.     The Defendant also requests pretrial disclosure of any other evidence the government intends to use to impeach the Defendant's credibility if they should choose to testify.  In the event the government intends to use such evidence, the Defendant requests a pretrial hearing to determine the admissibility of such evidence.

## VIII.

## MOTION FOR DISCLOSURE OF WITNESS STATEMENTS

77.     Under 18 U.S.C. §3500 (the "Jencks Act"), a defendant is entitled to witness statements after the witness has completed his or her testimony on direct examination.  This Court has, on a case-by-case basis, invoked its discretion to require production of Jencks Act statements in advance of the trial so that unnecessary delays will not take place during the course of the trial.

## IX.

### MOTION FOR PRESERVATION OF
### ROUGH NOTES AND OTHER EVIDENCE

78.     Mr. Session moves for an order of this Court requiring all government agents and officers who participated in the investigation of the Defendant in this case to retain and preserve all rough notes taken as part of their investigation whether or not the contents of the notes are incorporated in official records.

79.     This motion is made so the trial court can determine whether disclosure of the notes is required under *Brady, Agurs, Giglio* and/or the Jencks Act (18 U.S.C. §3500) or the Fifth and/or Sixth Amendments of the United States Constitution.

80.     Mr. Session also requests an order of this Court requiring the government to preserve and protect from destruction, alteration, mutilation or dilution any and all evidence acquired in their investigation of the Defendant.

## X.

### MOTION FOR GRAND JURY TRANSCRIPTS

81.     Mr. Session moves the Court, pursuant to Federal Rule of Criminal Procedure 6(e)(3)(C)(i), for disclosure of transcripts of all testimony before and all exhibits considered by the grand jury that indicted Mr. Session.  The Court should order production of the transcripts because Defendant has a particularized need for the transcripts, outlined below, which outweighs the grand jury policy of secrecy.  *See, e.g.,*

*Pittsburgh Plate Glass Company v. United States*, 360 U.S. 395, 400 (1959); *see also, e.g., Dennis v. United States*, 384 U.S. 855, 868-75 (1966).

82.     The particularized need exists in part because of Defendant's motion for a hearing on the government's duties under the cooperation agreement and because of Mr. Session's provision of substantial assistance, presented in Point I above.

83.     The government promised fair consideration to Mr. Session in return for his cooperation.  That cooperation is primarily reflected in the testimony Mr. Session provided to the Grand Jury.

84.     It is anticipated that the government may tend to downplay or discount the value of Mr. Session's cooperation.  Such a contention is inherently fact-driven, and a constitutionally-sufficient resolution of Defendant's contention would require judicial review of the minutes of Mr. Session's Grand Jury testimony, as well as access to interviewer's notes and the like pertaining to law enforcement's investigative interrogation of Mr. Session and preparation of Mr. Session as a witness before the Grand Jury.

## XI.

## MOTION TO CONTROVERT INTERCEPTION ORDERS AND SUPPRESS EVIDENCE

85.     Several telephone conversations in which Mr. Session was an alleged participant were recorded during the execution of a series of interception orders, making him an aggrieved person as defined by 18 U.S.C. §2500(11).  Mr. Session moves to controvert the pertinent interception orders and to suppress the intercepted communications pursuant to 18 U.S.C. §2518(10)(a).

86.     The first eavesdropping warrant is dated February 23, 2005, and it is from that warrant forward that Defendant challenges the government's interception of calls, making him an aggrieved person, and was further relied upon exclusively in the

eavesdropping warrant applications that the authorities obtained one month later to expand the focus of eavesdropping.

87.    The collection of evidence by the government runs in a direct and unattenuated chain from the February 23, 2005 warrant through subsequent eavesdropping warrants, search warrants, and the arrest of Defendant on April 9, 2005. Defendant contends that all of the evidence obtained from eavesdropping warrants, search warrants, and statements attributed to him at the time of his arrest must be suppressed as "fruit of the poisonous tree."

88.    Defendant contends that this Court's review of the initial warrant which led to the proverbial "flood gates" of this litigation will convince this Court that the warrant is fatally flawed in numerous respects.

89.    At the outset, it is critical to note that the warrant application provided by Rochester Police Officer Timothy Pearce requested permission to intercept calls made from cell phone number 585-802-8833 being utilized by "**DeShaun Brown and Daryl Session"** and registered to DeShaun Brown.

90.    A review of this warrant application reveals not a single shred of evidence to support the claim that DeShaun Brown and Daryl Session were using the same cell phone.  In fact, the warrant application is focused upon criminal activities of DeShaun Brown known to police authorities.

91.    Officer Pearce is required to provide "a full and complete statement of the facts and circumstances upon which the applicant based the justification for such an order . . . [including] the identity of the person committing the offense and whose communications will be intercepted."  It is inherently disingenuous that an eavesdropping warrant for one cell phone includes two targets – DeShaun Brown and Daryl Session.

92.     The legal wrong is that the government sought an eavesdropping warrant upon a demonstration of probable cause resting on the suspicious acts of two individuals, not one.

93.     In other words, by falsely claiming that Daryl Session utilized DeShaun Brown's cell phone, the government could bolster its wiretap warrant applications and extension requests by evidence of Daryl Session's wrongdoing, even though it was not Session's phone and only DeShaun Brown was the proper focus of inquiry.

94.     The government (while the wiretap application was made by a Rochester Police Department Officer, it was based upon a joint investigation involving BATF, DEA, and the IRS, in addition to State and local law enforcement agencies) persisted in subsequent wiretap applications and extension requests in characterizing DeShaun Brown's cell phone as utilized by Defendant Daryl Session, thereby seeking to lighten its burden of demonstrating probable cause by heaping the alleged sins of two persons in the application documents as meeting probable cause requirements when only the alleged sins of DeShaun Brown were properly under consideration.

95.     For example, it became evident within two weeks of the first eavesdropping warrant being issued that Defendant Daryl Session owned and utilized telephone numbers independently of DeShaun Brown's cell phones.  Indeed, the government pursued and obtained eavesdropping warrants against the telephones Mr. Session utilized.

96.     Despite the government's actual knowledge that Session utilized his own phones, and not DeShaun Brown's phones, the government never corrected or revealed to the Court for that matter that it had obtained an eavesdropping warrant against DeShaun Brown on the basis of alleged probable cause to wiretap Daryl Session's telephone.

97.     DeShaun Brown's criminal history presented little reason to eavesdrop upon his telephone.  Government agents had enlisted the cooperation of individuals who made drug buys on several occasions (some very recent) during the one year period prior to issuance of the initial eavesdropping warrant.

98.     As a result of using standard investigative techniques including staged drug buys from DeShaun Brown, the government was in a position to obtain a secret or unsealed indictment against DeShaun Brown, as well as to arrest him if it saw fit.

99.     Perhaps it is for this reason that the government irresponsible labeled Daryl Session as a co-utilizer of the DeShaun Brown cell phone, in order to trump up a basis for probable cause which required a demonstration that standard investigative techniques (which had worked very nicely against DeShaun Brown) were not adequate.

100.    Officer Pearce's application contains irrelevant, and stale information that should have led any Magistrate to decline to grant the requested permission.

101.    The warrant application contains almost entirely "template allegations," without the necessary specificity that the law requires for such an intrusion into personal liberties.  For example, the warrant application requests permission to eavesdrop for 30 days.  However, Pearce fails to provide any details as to why 30 days is necessary to achieve the objectives outlined in his warrant application.  It is certain that the request for 30 days was made simply as part of the boilerplate application and because that is the outside limit that the law allows.

102.    The introductory paragraphs contained in the Pearce application (1-5) are mere boilerplate recitations without any factual assertions relevant to Daryl Session.

103.    Paragraphs 6 and 7 recite the arrest histories of DeShaun Brown and Daryl Session.  Concerning Mr. Session, the last entry is a felony conviction dated in 1996.

104.     The Court will note in reviewing the warrant that ¶ 7 found on page 11 is followed by ¶ 10 on page 12 which is powerful proof that Pearce deleted two paragraphs of boilerplate inapplicable to this case, but failed to bother with renumbering the remaining paragraphs of boilerplate.

105.     Paragraph 10 recites that Pearce is being assisted in this investigation by task force authorities that include Alcohol, Tobacco & Firearms ("ATF"), Drug Enforcement Agency ("DEA"), and Internal Revenue Service ("IRS").  In this regard, the government has failed to provide us with any voluntary discovery from these federal agencies documenting their participation in this investigation.

106.     It is well settled that federal law applies in federal criminal prosecutions, even though the underlying investigation leading to prosecution was conducted solely by state officials.  *United States v. Pforzheimer*, 826 F.2d 200, 204 (2d Cir. 1987).  "[E]vidence obtained by state officers during a search which if conducted by federal officers, would have violated the defendant's immunity from unreasonable searches and seizures under the Fourth Amendment is inadmissible over the defendant's timely objections in a federal criminal trial."  *Elkins v. United States*, 364 U.S. 206, 223 (1960).

107.     "[P]robable cause for a search warrant is established if the totality of the circumstances indicates a probability of criminal activity."  *United States v. Rowell*, 903 F.2d 899. 902 (2d Cir. 1990) (internal citations omitted).  "This same standard applies to wiretap warrants."  *United States v. Rowell*, 903 F.2d 899. 902 (2d Cir. 1990) (internal citations omitted).  "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place."  *United States v. Smith*, 9 F.3d 1007, 1012 (2d Cir. 1993).

108.     Search warrants, to be valid, must be issued by a neutral, detached

magistrate, be based upon probable cause determined from facts and circumstances

submitted to a magistrate by the police supported by oath or affirmation and particularly

describing the place to be searched, and the persons or things to be seized.  *See*

*generally Groh v. Ramirez*, 540 U.S. 551 (2004).  There are also additional statutory

requirements that must be met for eavesdropping warrants.

> The Omnibus Crime Control and Safe Streets Act, as amended, governs the interception of wire, oral, and electronic communication. *See* 18 U.S.C. §§ 2510-22. Certain designated federal officials are authorized to apply to a Federal judge for an eavesdropping warrant. *Id.* § 2516(1). Such an order may be granted in conformity with Section 2518, which sets forth the procedure for the interception of wire, oral, and electronic communication. *Id.* The principal prosecuting attorney of any State or political subdivision of a State, if authorized by State Statute to apply to a State court judge of competent jurisdiction for an eavsstropping warrant, may apply to a State judge for such a warrant, which may be granted in conformity with Section 2518.  *Id.* § 2516(2).   Certain officials such as the Attorney General and Deputy Attorney General are authorized to make the application for a warrant to be executed by the Federal Bureau of Investigation or other responsible Federal agency when evidence of the commission of certain offenses, such as those relating to enforcement of the Atomic Energy Act, dealing with restrictions on payments to labor organizations, bribery of public officials, et cetera. *See* § 2518(1)(a)-(p). It is unnecessary to set forth those offenses here, because no defendants challenge issuance of the warrant on this basis. . . .The identity of the investigator making the application and the officer authorizing the application must be set forth. 18 U.S.C. § 2518(1)(a) (2000). A full and complete statement of the facts and circumstances upon which the applicant based the justification for such an order is required. *Id.* § 2518(1)(b). The statement must include details about the offense, a particular description of where the interception is to be made, a particular description of the type of communications to be intercepted, and the identity of the person committing the offense and whose communications will be intercepted. *Id.* § 2518(1)(b)(i)-(iii).  In addition to the factual basis justifying the warrant, the application must include "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." *Id.* § 2518(1)(c). The time period for which the interception must be maintained and information regarding all previous applications involving the same persons, facilities, or places must be included. *Id.* § 2518(1)(d)- (e). An application for an extension of a previous order must include the results so far obtained or a reasonable explanation for why such results have not been obtained. *Id.* § 2518(1)(f). The court may require additional material or testimony. *Id.* § 2518(2). The court may issue an ex parte eavesdropping warrant upon a finding that there is probable cause to believe a person is committing, has committed, or is about to commit an enumerated offense; there is

probable cause to believe that particular communications regarding that offense will be intercepted; "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous;" and there is probable cause to believe that the facilities or place where the interception will occur "are being used, or are about to be used in connection with the commission of such offense, or are leased to, listed in the name of, or commonly used by such person." *Id.* § 2518(3). . . . The order must set forth the identity of the person whose communications will be intercepted if it is known; the nature and location of the facility or place where the interception will occur; a "particular description of the type of communication sought to be intercepted, and a statement of the particular offense to which it relates;" the agency authorized to perform the interception and the person who authorized the application; and the time period during which such interceptions are authorized. 18 U.S.C. § 2518(4). An order may not authorize interceptions for longer than is necessary to achieve the objective, and in any event no longer than thirty days. *Id.* § 2518(5). Progress reports may be required by the court. *Id.* § 2518(6).  An aggrieved person may move to suppress the contents of any intercepted oral or wire communication, along with the fruits of such interception. *Id.* § 2518(10)(a). A motion to suppress may be based upon the grounds that "(i) the communication was unlawfully intercepted; (ii) the order of authorization or approval under which it was intercepted is insufficient on its face; or (iii) the interception was not made in conformity with the order of authorization or approval." *Id.* These are the only nonconstitutional bases on which such evidence may be suppressed. *Id.* § 2518(10)(c).

*United States v. Moran*, 349 F.Supp.2d 425, 453-55 (N.D.N.Y. 2005).

109.    In addition there are other requirements for a valid warrant authorizing a wiretap to be issue.  First, it must be demonstrated that there exists probable cause to believe that a particular offense has been or is being committed.  *Berger v. New York*, 388 U.S. 41, 58 (1967).  In addition, the warrant must particularly describe the conversations sought.  *Berger v. New York*, 388 U.S. 41, 58-59 (1967).  The person or persons whose communications are to be overheard must be identified.  *Berger v. New York*, 388 U.S. 41, 59 (1967).  Provisions for termination of the eavesdropping must be present allowing for termination of the eavesdropping once the desired information has been obtained.  *Berger v. New York*, 388 U.S. 41, 59-60 (1967).  The eavesdropping must be limited to a short time period.  *Berger v. New York*, 388 U.S. 41, 59-60 (1967).

Finally, there must be a return on the warrant, showing the court what conversations were intercepted. *Berger v. New York*, 388 U.S. 41, 60 (1967).

110.    Evidence seized in violation of the Fourth Amendment of the U.S. Constitution is excluded from use against a defendant in a criminal trial. *See generally Mapp v. Ohio*, 368 U.S. 871 (1961). In addition, "indirect fruits of an illegal search or arrest should be suppressed when they bear a sufficiently close relationship to the underlying illegality." *New York v. Harris*, 495 U.S. 14, 19 (1990); *See also Wong Sun v. United States*, 371 U.S. 471 (1963). However, there is a good faith exception to the exclusionary rule. Evidence obtained by police in reasonable reliance on a facially valid warrant is admissible in a criminal trial despite an ultimate finding that the warrant was not supported by probable cause. *See generally United States v. Leon*, 468 U.S. 897 (1984). However, "[d]eference to the magistrate, however, is not boundless. It is clear, first, that the deference accorded to a magistrate's finding of probable cause does not preclude inquiry into the knowing or reckless falsity of the affidavit on which that determination was based." *United States v. Leon*, 468 U.S. 897, 914 (1984). "Second, the courts must also insist that the magistrate purport to perform his neutral and detached function and not serve merely as a rubber stamp for the police" *United States v. Leon*, 468 U.S. 897, 914 (1984) (internal citations omitted). "A magistrate failing to manifest that neutrality and detachment demanded of a judicial officer when presented with a warrant application and who acts instead as an adjunct law enforcement officer cannot provide valid authorization for an otherwise unconstitutional search." *United States v. Leon*, 468 U.S. 897, 914 (1984). "Third, reviewing courts will not defer to a warrant based on an affidavit that does not provide the magistrate with a substantial basis for determining the existence of probable cause." *United States v. Leon*, 468 U.S. 897, 915 (1984). "Sufficient information must be presented to the magistrate to allow

*United States v. Leon*, 468 U.S. 897, 915 (1984).  "Even if the warrant application was supported by more than a "bare bones" affidavit, a reviewing court may properly conclude that, notwithstanding the deference that magistrates deserve, the warrant was invalid because the magistrate's probable-cause determination reflected an improper analysis of the totality of the circumstances . . . or because the form of the warrant was improper in some respect."  *United States v. Leon*, 468 U.S. 897, 915 (1984).  The good faith exception "will not apply when . . . the warrant application is so lacking in indicia of probable cause as to render reliance upon it unreasonable."  *United States v. Smith*, 9 F.3d 1007, 1015 (2d Cir. 1993).

111.    Annexed hereto as Exhibit B is a copy of a Form ATF EF 3120.2, summarizing the results of the evidence obtained through executing fourteen search warrants on April 9, 2005.

112.    Exhibit B illustrates that the initial warrant wrongly obtained against DeShaun Brown led to tainted warrants against Defendant Daryl Session and, ultimately, to tainted search warrant applications which, almost exclusively, were founded upon the evidence obtained through eavesdropping.

113.    The eavesdropping warrants and application documents are on the order of 1,000 pages in length.  Defendant Daryl Session respectfully requests the opportunity to make these available to the Court either a) in hard copy at present, b) in hard copy or digital form at a suppression hearing, or c) alternative digital form, for example, on CD ROM, as ordered by the Court.

**XIII**

**MOTION TO SUPPRESS STATEMENTS OBTAINED
FROM DEFENDANT DARYL SESSION ON APRIL 9, 2005**

114.    According to the government, on April 9, 2005, shortly before noon, law enforcement agents executed a New York State search warrant at 67 Quintin Road in the City of Rochester, wherein Rochester Police Department officers raided the premises and arrested three individuals, including Defendant Daryl Session.

115.    Defendant Session was placed in custody and remained in custody while transported to the Rochester Police Department Public Safety Building.  The government alleges that BATF Special Agent John H. Hayes and RPD Investigator Tom Janus interviewed Daryl Session, wherein Session purported to admit to purchasing kilo quantities of cocaine, reselling the cocaine, possessing five kilograms of cocaine and $17,000 U.S. currency which was stolen from his house at 67 Quintin Road in the City of Rochester, that he owned two firearms seized at the Kenetta Powell residence at 1305 Culver Road, and that he owned one kilogram of cocaine that was also seized at the Kenetta Powell residence.

116.    The government alleges that Investigator Janus advised Session of his Miranda Warnings and Session agreed to speak with them.

117.    Defendant Daryl Session, by way of proffer, asserts he has no recollection of having orally waived his Miranda Rights, that he has no recollection of signing a Miranda waiver "card" or other document waiving his Miranda Rights, that he was not advised of his Miranda Rights, that at the times relevant hereto he was in police custody and therefore deserving of full and complete Miranda Warnings prior to interrogation, and that he did not make the statements which Investigator Janus and Special Agent Hayes attribute to him.  Defendant Session further, by counsel, advises the Court that he wishes to appear at a hearing and testify in conformity with his proffer,

and for the purpose of obtaining an Order suppressing the alleged statements attributable to him and the unlawful interrogation, in exercise of his Fourth Amendment rights.

118.    All evidence obtained by reason of tracking Session by way of Global Positioning Satellite should be suppressed.

119.    On or about March 25, 2005, the Hon. Mel Castro, Rochester City Court Judge, signed an Order authorizing the seizure of a certain 2005 grey Dodge automobile rented by Defendant Daryl Session, for the purpose of installing a vehicle tracking device using Global Positioning Satellite and cellular/internet tracking technologies.

120.    According to the criminal Complaint and the supporting affidavit of BATF Special Agent John H. Hayes, the Seizure Order was executed, and law enforcement agents continuously tracked the activities of the Daryl Session rental Dodge.

121.    The government has not provided details as to its agents' efforts in tracking the Session vehicle, the results obtained therefrom, and the evidence and information obtained in whole or in part by use of the tracking system.  However, it is clear that the government relied upon the GPS tracking device to collect evidence implicating Defendant Daryl Session in alleged drug trafficking.  For example, ¶ 69 of BATF Special Agent Hayes' affidavit states that the GPS tracking system was used on April 2, 2005 to monitor Session's movements and that the evidence obtained convinced Special Agent Hayes that Defendant Session was attempting to arrange the purchase of a quantity of cocaine.

122.    The voluntary discovery which affiant obtained from Defendant's former counsel, Mr. Pullano, does not include the Seizure Order or supporting applications and any returns made upon executing the Seizure Order, so Defendant Session should be afforded the opportunity to supplement his challenge to the legitimacy and constitutionality of such Seizure Order after full discovery is obtained.

123. However, Defendant Session does alert the Court to his assertion of the following.

124. That Defendant Session had a possessory interest in the vehicle in question, that Session had a legitimate right of privacy with respect to his use and enjoyment thereof; that Session did not consent to seizure or monitoring of his vehicle; that Defendant Session is asserting his Fourth Amendment right to be free of unreasonable searches and seizures; and that the March 25, 2005 Seizure Order in question was unconstitutionally issued, and remedied by all evidence obtained therefrom, and, furthermore, that evidence obtained from other warrants and orders issued in partial reliance upon the evidence collected pursuant to the Seizure Order should be suppressed under the "fruit of the poisonous" doctrine.

**XIV**

**THE THIRD COUNT OF THE INDICTMENT
SHOULD BE DISMISSED AS A MATTER OF LAW**

125. Annexed hereto as Exhibit A is a copy of the Indictment against Defendant Daryl Session, which presents three felony counts.

126. The Court's attention is respectfully drawn to the third count, which alleges a violation of 18 U.S.C. §924(c)(1)(A)(i) and §2, alleging that "in or about April, 2005" Defendant Daryl Session did "knowingly and unlawfully possess" two handguns "in furtherance of a drug trafficking crime," to wit, the 18 U.S.C. §841 & 846 crimes alleged in the first two counts of the Indictment.

127. According to the discovery materials provided by the government, the two firearms referenced in the Indictment were recovered on April 9, 2005 from the apartment of Kenetta Powell at 1305 Culver Road.

128. Upon information and belief, the government is without any evidence at all that the two firearms in question were at any location other than the Kenetta Powell

apartment in April, 2005.  The significance of this is that the government presents no evidence whatever that Defendant Daryl Session *actually possessed* either of the firearms in question in the month of April, 2005, or that, much less that Defendant Daryl Session possessed one or both of these two weapons *in furtherance of a drug trafficking crime.*

129.    Construing the government's case in a light most favorable to it, i.e., assuming Session owned the weapons, the government cannot and will not come forward with any evidence as to the "in furtherance of a drug trafficking crime" element of Count Three.  Alternatively, if the Court should decline to dismiss Count Three of the Indictment, a bill of particulars should be ordered substantiating when it was Session possessed the weapons, where the weapons were during Session's possession, and what circumstances there were associated with Mr. Session's possession that constitutes evidence they were possessed "in furtherance of a drug trafficking crime."

130.    As well, Count Three of the Indictment is confined to a fairly discrete timeframe, that is, "in or about April, 2005," whereas Count One of the Indictment (which Count Three alleges to be a drug trafficking crime furthered by firearm possession) spans five years and four months.

131.    The discrepancy between the very long time period referenced in Count One and the nine day or so time period alleged in Count Three places the two Counts in conflict: that is, Defendant should not be forced to stand trial on the question of whether his possession of firearms in April, 2005 was in furtherance of a conspiracy unfolding in the years 2000, 2001, 2002, 2003 & 2004.

**XV**

**MOTION TO *VOIR DIRE* GOVERNMENT EXPERTS
OUTSIDE THE PRESENCE OF THE JURY**

132.    Mr. Session moves the Court to issue an order allowing him to *voir dire* any proposed government experts at trial outside the presence of the jury.

133.    Rule 104 of the Federal Rules of Evidence states that preliminary questions regarding the competency of a person called as a witness "shall be determined by the Court."

134.    A defendant is entitled to challenge the competence of the government's proposed experts and the admissibility of his/her testimony.  *See, In re Chicago Flood Litig.,* No. 93 C 1214, 1995 U.S. Dist. LEXIS 10305, at *27 (N.D. Ill. July 19, 1995) (when question raised regarding basis for proffered expert testimony, court permitted *voir dire* outside the jury's presence).

135.    A *voir dire* examination outside the presence of the jurors is the preferred method for determining the competency of an offered expert witness.  *See, e.g., United States v. 68.94 Acres of Land,* 918 F.2d 389, 391 (3d Cir. 1990); *see also, e.g., United States v. Snow,* 552 F.2d 165, 168 (6th Cir. 1977) (defense counsel examined government expert outside of presence of jury regarding qualifications); *United States v. Henson*, 486 F.2d 1292, 1303 (D.C. Cir. 1973) (*en banc*) *voir dire* of government expert outside the presence of the jury).

136.    In the present case, complete discovery has not been received from the government, including the names of and summaries by the government's proposed experts, if any, pursuant to Rule 16 of the Federal Rules of Criminal Procedure. Therefore, this motion is made so that if the government subsequently identifies any experts (such as to identify questioned substances), defense counsel may *voir dire* the expert outside of the presence of the jury.

137.    Therefore, Mr. Session requests that he be permitted to *voir dire* any government expert or experts outside the presence of the jury, as to both competency and admissibility.

## XVI

## MOTION FOR AUDIBILITY HEARING

138.    Mr. Session moves the Court to hold an audibility hearing to determine

whether any recordings that the government seeks to introduce at his trial are audible.

The government has not formally identified what recordings it will introduce at trial.

Once it does so, an audibility hearing should be held.

139.    As the Court is aware, if portions of any recording are unintelligible, and

the unintelligible portions are so substantial as to render the recording as a whole

untrustworthy, the recording must be suppressed.  *See United States v. Arango-Correa*,

851 F.2d 54, 58 (2d Cir. 1988); *United States v. Aisenberg*, 120 F.Supp. 2d 1345 (M.D.

Fla. 2000).  Therefore, in advance of trial, the Court should conduct a hearing to

determine the audibility of the recordings the government plans to introduce at trial.

## XVII

## MOTION FOR LEAVE TO MAKE OTHER MOTIONS

140.    Mr. Session respectfully moves the Court for an order allowing him to

make further and additional motions which may be necessitated by due process of law,

by the Court's ruling on the relief sought herein, by additional discovery provided by the

government or investigation made by the defense, and/or by any information provided by

the government in response to the Defendant's demands.

## XVIII

## MOTION TO SUPPRESS USE OF EVIDENCE
## OBTAINED IN SEARCH WARRANTS

141.    The law is settled that search warrants have limits, and that the "general

warrant" is prohibited by the Fourth Amendment.

142.    The warrant must enable the executing officer to ascertain and identify

with reasonable certainty those items that the magistrate has authorized to be seized,

and to avoid a wide ranging exploratory search.  *Maryland v. Garrison*, 480 U.S. 79 (1987).

143.    Whether a warrant is sufficiently particular to pass constitutional scrutiny presents a question of law.  *U.S. v. George*, 975 F.2d 72, 76 (2d Cir. 1992).

144.    In this case, the search warrant of the 67 Quentin Road premises, recites in hundreds of words an endless series of things, documents, records, etc. that may be seized.  So too, did the search warrants affecting other premises (including those owned by Shirley Session) as to which Mr. Session has legal standing, recite the same boilerplate, all-inclusive language.

145.    The Constitution requires particularity, and abhors generality.  Perhaps for the purpose of circumventing these rules, the government authorities who applied for and obtained the search warrants dated April 7, 2005 executed by the Hon. Richard A. Keenan, Monroe County Court Judge, presented a search warrant with a boilerplate recitation of things to be seized that, while superficially appearing to be particularized, actually becomes general by reason of being too inclusive.  Ergo, search warrants are unconstitutional.

## XVIII

### THE THIRD COUNT OF THE INDICTMENT MUST BE DISMISSED

146.    The third count of the indictment alleges that in the month of April, 2005 the Defendant Daryl Session possessed two firearms in furtherance of a drug trafficking crime.

147.    Other than the reference to a 30+ day period of time, that is, the month of April, and identification of the particular firearms, no facts are alleged in the count.

148.    Affiant has reviewed the Complaint in this action, and nowhere does it allege much less present evidentiary facts establishing that Mr. Session possessed the firearms, much less possessed them in furtherance of drug trafficking.

149.    It is evident that the government has somehow managed to make a marginal and patently weak gun possession charge into a possession-in-furtherance federal crime, and it is equally evident that this had no factual support before the jury or that this was accomplished by an erroneous and prejudicial instruction to the jury as to the element of "in furtherance of a drug trafficking" crime.

150.    Therefore, count three of the indictment should be dismissed; alternatively, the Court should review the grand jury minutes to verify the absence of evidence and/or the existence of an erroneous grand jury instruction, for the purpose of determining whether the count should be dismissed.

Affirmed this 10th day of October 2006.

s/David J. Seeger, Esq.
DAVID J. SEEGER, ESQ.
*Attorney for Defendant*
69 Delaware Avenue, Suite 1100
Buffalo, NY  14202
716-856-1536
david.seeger@davidseegerlaw.net